IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FRANCISCO AMEZGUITA, SR. and
FRANCISCO AMEZGUITA, JR.,
on behalf of themselves and others
similarly situated

      Plaintiffs,

vs.                                                                CV 10-1153 MV/CG

DYNASTY INSULATION, INC.

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on United State District Judge Martha Vazquez's *Order of Reference.* (Doc. 26). Judge Vazquez recently granted Plaintiff's motion for default judgment against Defendant Dynasty Insulation and then referred the case to this Court for recommendations regarding the appropriate award of damages. (Doc. 25; Doc. 26; Doc. 27). The Court has since requested two supplemental briefs from Plaintiffs in an effort to determine the appropriate damage award. (*See,* Doc. 31; Doc. 35). Plaintiffs have provided supplemental briefs and now request an award of damages of $149,312.25, including attorney's fees and costs. (Doc. 36 at 6). The Court, having considered the Plaintiffs' filings, the relevant law, and otherwise being fully advised in the premises, **RECOMMENDS** that Plaintiff's request be **GRANTED IN PART AND DENIED IN PART**.

### I.    Background

The complaint asserts that Defendant Dynasty Insulation failed to pay appropriate

regular and overtime wages for work performed by Plaintiffs and similarly situated employees. (Doc. 1 at 2-3). Plaintiffs have asserted claims under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the New Mexico Minimum Wage Act, N.M.S.A. 1978 § 50-4-20 *et seq.* ("MWA"), and the New Mexico Public Works Minimum Wage Act, N.M.S.A. 1978 § 13-4-10 *et seq* ("PWMWA"). (*Id.* at 1-8). Plaintiffs seek compensatory, punitive, and statutory damages, their reasonable costs and attorney fees, as well as injunctive and declaratory relief. (*Id.* at 11-12).

The case was initially brought by the two named Plaintiffs - Francisco Amezguita, Sr., and Francisco Amezguita, Jr. However, during the course of the litigation, Plaintiffs sought to include an additional twenty-three employees who wished to "pursue [their] claims against Defendant arising out of federal wage and hour laws in the proposed lawsuit." (Doc. 9; Doc.  13). Plaintiffs did not seek to amend the complaint and add the 23 employees, but rather filed signed consent forms for all 23 individuals agreeing to "opt in" to the litigation. (*Id.*). Plaintiffs subsequently filed a motion to certify the case as a collective action under the FLSA. (Doc. 20). Judge Vazquez granted the motion with regard to the FLSA claims but found that Plaintiffs had failed to meet the class action certification requirements for the state law claims. (Doc. 25 at 1-10). Having found that 25 (the two Plaintiffs plus the 23 opt-ins) individuals were entitled to relief under the FLSA claim but that only the two Plaintiffs could recover under the state law claims, Judge Vazquez referred the case to this Court to determine how relief should be apportioned. (*Id.* at 10).

Following the order of reference, the Court noted that there was little evidence in the record to support Plaintiffs' claims with regard to the appropriate amount of damages to award. The evidence consisted of no more than affidavits filed by Plaintiffs and five other

opt-in employees wherein they approximated the dates worked for Dynasty, the wages paid, the amount of overtime worked, and the estimated worth of the unpaid overtime wages. (*See* Doc. 15; Doc. 18; Doc. 21). The affidavits did not include any pay stubs or other documentary evidence to substantiate their claims.  (*See, e.g.* Doc. 18 at 5, 10, 13, 15, 17). The other 18 opt-in employees did not provid any information or evidence regarding their work dates or hours with Dynasty Insulation. The Court noted that Plaintiffs bore the burden of proving the extent of their damages with "reasonable certainty" and directed them to supplement the record by establishing "through competent evidence, the dates worked by Plaintiffs and the 23 opt-in employees, the regular and overtime hours worked, and the wage paid to each employee for those hours." (Doc. 28 at 3).

Plaintiffs responded to the Court's order with a supplemental brief and declaration wherein they provided photocopies of pay stubs and pay records for the two named Plaintiffs as well as Leonel Carillo, one of the opt-in employees. (Doc. 32; Doc. 33 at 7-18; Doc 33-1 at 2-14, 16-27). The other four employees who had previously supplied affidavits - Irvin Jurado, Jose Sanchez, Ricardo Valenzuela, and Rudolfo Valenzuela - did not provide any new documentation to support their claims. No evidence was introduced to estimate or quantify the value of the claims of the other eighteen opt-in employees. Plaintiffs' counsel admitted that he had lost touch with many of the opt-in class members and had no way of contacting them. (Doc. 32 at 4). Plaintiffs included a proposed distribution of funds wherein they claimed that Francisco Amezguita, Sr., was entitled to $109,895.68 in damages, Francisco Amezguita, Jr., was entitled to $89,256.50, and the five aforementioned opt-in employees were collectively entitled to $33,728.00, for a total of $149,312.25. (Doc. 33 at

4-5; Doc. 33-2 at 2; Doc. 32 at 5).[1]

The Court reviewed Plaintiffs' supplemental brief and declaration in support and found that, while they "provided helpful information[,]" they raised a number of new questions. The Court noted that Plaintiffs had not provided any legal support for their contention that the affidavits alone sufficed to prove the opt-in employees' damages. (Doc. 35 at 4-5). The Court also queried whether awarding liquidated damages under the FLSA, MWA, and PWMWA would amount to an improper double recovery for the named Plaintiffs and whether the liquidated damages should be limited to whichever statute provides the greatest recovery. (*Id.* at 6). The Court ordered Plaintiffs to submit a second supplemental brief addressing these issues. (*Id.*).

Plaintiffs responded with their supplemental brief on July 30, 2012. (Doc. 36). Plaintiffs argued that the Court was entitled to rely solely on the opt-in employees' affidavits in calculating their damages and that a hearing was unnecessary. (*Id.* at 3-5). The supplemental brief did not address the Court's concerns regarding the possibility of an improper windfall were the Court to award liquidated damages under both the FLSA, MWA, and PWMWA. The matter is now before the Court for a recommendation regarding the appropriate award of damages.

## II.   Analysis

### A.   Award of Damages for Opt-In Employees Under FLSA

As noted, twenty-three former employees of Dynasty Insulation "opted-in" to join

---

[1] It is not clear to the Court how Plaintiffs came up with the figure of $149,312.25. Based on the Court's calculation, the total value of Plaintiffs' various claims amounts to $232,880.18 ($109,895.68 + $89,256.50 + $33,728.00). When combined with Plaintiffs' request for attorney fees and costs, the total amount comes out to $260,239.87 ($232,880.18 + $26,318.75 + $1,040.94).

Plaintiffs' complaint for unpaid overtime wages under the FLSA. Pursuant to the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The FLSA provides that employees may recover the value of unpaid overtime wages. *Id.* at § 206(b). Employees may also recover an additional amount equal to the value of the unpaid wages as liquidated damages. *Id.*

Of the twenty-three employees who opted in to the litigation, only five employees - Leonel Carillo, Irvin Jurado, Jose Sanchez, Ricardo Valenzuela, and Rudolfo Valenzuela - supplied affidavits wherein they estimated their daily wage and the number of overtime hours worked. Of the five, only Leonel Carillo provided pay stubs and other evidence to substantiate his claim for damages. (Doc. 33-1 at 16-27). The question for the Court is whether the affidavits and pay stubs supplied by the opt-in employees suffice to establish the amount of damages due to them following Judge Vazquez's default judgment.

"When a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proven in a supplemental hearing or proceeding." *United States v. Craighead*, 176 Fed. Appx. 922, 925 (10th Cir.2006) (unpublished) (quoting *Am. Red Cross v. Cmty. Blood Ctr. of the Ozarks*, 257 F.3d 859, 864 (8th Cir.2001)); *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir.1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."). It is the Plaintiff's duty to prove damages with "reasonable certainty." *Credit Lyonnais Sec.*

*(USA) v. Alcantara*, 183 F.3d 151, 152 (2d Cir.1999).

While it is true that plaintiffs bear the burden of proving their damages, the FLSA places the burden of maintaining accurate records of employees' wages and hours on the employer. *See* 29 U.S.C. § 211(c) (stating that an employer is required to maintain "records of the person employed by him and of the wages, hours, and other conditions and practices of employment maintained by him."). Absent such documentation, many courts have held that an employee may prove the fact of his employment and his right to damages "by relying on his recollection alone." *Yang v. ACBL Corp.*, 427 F.Supp.2d 327, 335 (S.D.N.Y. 2005); *see also Schultz v. All-Fund, Inc.*, 2007 WL 2333049, at * 3-4 (D. Md. Aug. 13, 2007); *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 109 (4th Cir. 1988) (holding that employee need not "prove each hour of overtime work with unerring accuracy or certainty" but that they should submit evidence from which a court may reasonably infer the number of hours worked). An affidavit setting forth the number of hours worked has been held to be sufficient. *Daugherty v. S.D. Constructors, Inc.*, 2012 WL 2873355, at *3 (M.D. Fla. June 13, 2012) ("A plaintiff may establish the necessary amount of damages by affidavit."); *Rodriguez v. Queens Convenience Deli Corp.*, 2011 WL 4962397, at *2 (E.D. N.Y. Oct. 19, 2011); *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 2199 F.R.D. 494, 498 (C.D. Cal. 2003) (noting that "Plaintiff's burden in "proving up" damages is relatively lenient" in the default judgment context because "[i]njury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled."). For those reasons, the Court finds that the five opt-in employees who supplied affidavits have met their burden of proving their damages with reasonable certainty. However, there is no information in the record to support the other eighteen employees' claims for

6

damages and, for that reason, the Court declines to award them any damages in this action.

Having established that five of the opt-in employees are entitled to an award of damages, the Court turns to the question of what wage to use in calculating the value of their unpaid overtime. Each of the employees was paid between $10-$13 during the regular workday. (Doc. 33-2 at 4, 6, 8, 14, 16). However, in calculating the value of their overtime pay, some of the employees did not use the pay they actually received from Dynasty, but rather the "correct prev[ailing] wage" which they contend *should* have been paid. (*Id.* at 2). The "correct prevailing wage" refers solely to the wage the employees should have earned while working on public works covered under the PWMWA. *See* N.M.S.A. 1978 § 13-4-11(B) (Stating that the director of the Labor Relations Division of the New Mexico Workforce Solutions Department shall determine the prevailing wage for certain public works by comparing rates established in collective bargaining agreements for similar work in similar localities).

The FLSA calculates the value of the employee's unpaid overtime wages at "one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The Code of Federal Regulations computes the "regular rate" for purposes of the FLSA by "dividing the total remuneration paid to an employee in the workweek by the total number of hours of work in the workweek for which such compensation was paid." 5 C.F.R. § 551.511(a). However, the regulations clarify that

> Where a higher minimum wage . . . is applicable to an employee by virtue of [state law], the regular rate of the employee, as the term is used in the [FLSA], cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' as used in [§ 207] must be construed to mean the regular rate at which he is *lawfully* employed.

29 C.F.R. § 778.5 (emphasis added). Therefore, inasmuch as any employee asserts that he was not properly compensated for overtime hours while working on a public works project, the Court must calculate his damages using the prevailing wage applicable under the PWMWA.

### i.   Leonel Carillo

Mr. Carillo's affidavit states that he was typically paid $12 per hour while working on a New Mexico public works project. (Doc. 33-2 at 4). He estimates that he worked ten hours of overtime per week for eight weeks while working on that project and that he received no pay for those hours. (*Id.* at 5). He states that the prevailing wage for his work was at least $38.00 per hour and that the prevailing overtime wage for his construction work was at least $53.00 per hour. (Doc. 33-2 at 8-9).[2] Pursuant to the FLSA, the value of those unpaid overtime hours is $4,240.00. ($53.00 x 80 hours). Mr. Carillo is also entitled to an amount equal to the value of the unpaid overtime hours in liquidated damages. The Court therefore recommends that Mr. Carillo be awarded $8,480.00 in unpaid overtime and liquidated damages.

### ii.   Irvin Jurado

Mr. Jurado states that he was typically paid between $12-$14 per hour while working on a public works project for Dynasty. Although he alleges that Dynasty failed to pay him overtime wages, he does not state how many hours of overtime he worked for Dynasty. (*Id.* at 7). The entirety of his claim with regard to unpaid overtime is that Dynasty failed to

---

[2] The Court notes that one and one half of $38.00 is $57.00, rather than the $53.00 Plaintiff has requested. Nevertheless, the Court has no means of verifying what the correct prevailing wage rate was for mechanical and insulation work done on public works projects in Alamogordo in 2011 and will defer to Mr. Carillo's representations regarding the appropriate wage he should have been paid.

"provide[ ] any compensation to make me whole for the failure to pay overtime compensation . . ." The Court has no means of calculating the value of his unpaid overtime wages and the Court therefore recommends that Mr. Jurado be awarded no damages under the FLSA.

### iii.   Jose M. Sanchez

Mr. Sanchez states that he was typically paid between $11.50 and $12.00 per hour while working on two New Mexico public works projects. (*Id.* at 8). He estimates that he worked sixteen hours of overtime per week for three weeks while employed on those public works projects. (*Id.* at 8-9). He asserts that he was paid $37.50 per hour for those overtime hours, rather than the $53.00 per hour he should have been paid. (*Id.* at 9). Pursuant to the FLSA, the value of those unpaid overtime hours is $744.00. ($53.00 x 48 hours minus the $1,800.00 already paid by Dynasty). Mr. Sanchez is also entitled to an amount equal to the value of the unpaid overtime hours in liquidated damages. The Court therefore recommends that Mr. Carillo be awarded $1,488.00 in unpaid overtime and liquidated damages.

### iv.   Ricardo Valenzuela

Ricardo Valenzuela states that he was typically paid $10 per hour while working on various construction jobs for Dynasty. (*Id.* at 14). He estimates that he worked ten hours of unpaid overtime every week between December of 2008 and January of 2010, for a total of sixty weeks. (*Id.*). Pursuant to the FLSA, the value of those unpaid overtime hours is $9,000.00. ($15 x 600 hours). Ricardo Valenzuela is also entitled to an amount equal to the value of the unpaid overtime hours in liquidated damages. The Court therefore recommends that Ricardo Valenzuela be awarded $18,000.00 in unpaid overtime and

liquidated damages.

**v.**     **Rodolfo Valenzuela**

Rodolfo Valenzuela states that he was paid $10 per hour while working on various construction jobs for Dynasty. (*Id.* at 16). He estimates that he worked eight hours of unpaid overtime every week between November of 2009 and June of 2010, for a total of thirty-two weeks. (*Id.*). Pursuant to the FLSA, the value of those unpaid overtime hours is $3,840.00. ($15 x 256 hours). Rodolfo Valenzuela is also entitled to an amount equal to the value of the unpaid overtime hours in liquidated damages. The Court therefore recommends that Rodolfo Valenzuela be awarded $7,680.00 in unpaid overtime and liquidated damages.

**B.**     **Award of Damages for Francisco Amezguita, Sr., and Francisco Amezguita, Jr.**

The two named Plaintiffs have asserted claims for damages under both the FLSA, the MWA, and the PWMWA. The claims arise from Dynasty's failure to pay for all overtime hours worked, or to pay the correct prevailing wage for work performed on New Mexico public works projects. (*See, generally*, Doc. 1). Both Plaintiffs have provided affidavits and documentary evidence in support of their claims for damages. (Doc. 33 at 7-18; Doc 33-1 at 2-13; Doc. 33-2 at 10-13).

**i.**     **Plaintiffs May Not Recover Under All Three Statutes**

While both Plaintiffs are entitled to damages, the salient question for this Court is whether Plaintiffs are entitled to recover under all three statutes or whether their damages should be restricted to whichever statute provides for the greatest reward. As previously noted, the Court asked Plaintiffs to provide supplementary briefing on whether they were

10

entitled to recover under all three statutes but Plaintiffs failed to provide any response to the Court's inquiry. (Doc. 35 at 6).

Numerous federal courts have adjudicated claims for damages under both the FLSA and the relevant state minimum wage act. These courts have routinely refused to permit multiple recoveries for the same injury and have restricted the plaintiff's recovery to whichever statute provides the greatest damages. *See, e.g*, *Thornton v. Crazy Horse, Inc.*, 2012 WL 2175753 at * 13 (D. Alaska, June 14, 2012) ("There is substantial overlap among the [FLSA, and two Alaskan labor statutes], however, and Plaintiffs are not permitted to recover multiple times for the same injury. Nonetheless, where two or more forms of damages are available to a plaintiff, the court may award the greater of the two."); *Johnson v. VCG Holding Corp.*, 845 F.Supp.2d 353, 380 n.68 (D. Me. 2012) (noting, in dicta, that plaintiffs may not recover damages under both the FLSA and Maine's state minimum wage law); *Francisco v. Susano*, 2011 WL 5593165, * at 3 (D. Colo. Nov. 6, 2011); *Pineda-Herrera v. Dar-Ar-Da, Inc.*, 2011 WL 2133825 at *4-5 (E.D. N.Y. May 26, 2011) (collecting cases). The Court agrees with this line of cases and finds that Plaintiffs are not entitled to recover multiple times for the same injury.

**ii.**    **The Court Will Award Damages Solely Under the New Mexico Public Works Minimum Wage Act**

The Court will award damages solely under the PWMWA because, for the reasons described below, the Court finds that the PWMWA provides the greatest recovery for Plaintiffs' claims. As noted, the PWMWA provides that all employees working on a qualifying New Mexico public works project must be paid the prevailing wage as determined by director of the Labor Relations Division of the New Mexico Workforce Solutions

11

Department. N.M.S.A. 1978 § 13-4-11(A)-(B). The prevailing wage rate is typically determined by reference to wages paid to similarly situated laborers in the locality or by reference to collective bargaining agreements covering similar work and laborer classifications. *Id.* The PWMWA provides that any "contractor, subcontractor, employer, or a person as a contractor responsible for [failing to pay the prevailing wage] shall be liable to any affected employee for the employee's unpaid wages or fringe benefits." N.M.S.A. 1978 § 13-4-14(C). The statute further provides for liquidated damages in the amount of one hundred dollars per day for each day the employee was not paid the correct prevailing wage. (*Id.*).

The Court acknowledges that, at first blush, the Minimum Wage Act appears to provide the greatest recovery because it allows for Plaintiffs to recover the value of their unpaid wages as well as 200% of that amount in liquidated damages. N.M.S.A. 1978 § 50-4-26(C). The liquidated damages provision of the MWA far outclasses the liquidated damages provisions of the FLSA or PWMWA, which provide only for 100% of unpaid wages or $100 a day, respectively. 29 U.S.C. § 206(b); N.M.S.A. 1978 § 13-4-14(C).[3] However, the MWA  mandates no more than a minimum wage of $7.50. N.M.S.A.1978 § 50-4-26(A). It is undisputed that both Plaintiffs made more than this amount at all times while working for Dynasty and therefore the MWA does not provide a means of recovering the value of Plaintiffs' inadequate wages. At best, the MWA will only allow Plaintiffs to recover damages for overtime work where they were not paid "one and one-half times the employee's regularly hourly rate of pay . . ." *Id.* at § 50-4-26(D). Similarly, the FLSA will only

---

[3] In Plaintiffs' proposed distribution of funds, the liquidated damages purportedly owed under the MWA is almost double the combined liquidated damages available under the FLSA and PWMWA. (*See* Doc. 33 at 4-5).

provide compensation for unpaid overtime hours, as opposed to all hours worked for less than the prevailing wage. 29 U.S.C. § 207(b). Only the PWMWA provides an avenue for Plaintiffs to recover the value of the wages they should have been paid under the prevailing wage rate and therefore the PWMWA will provide the greatest recovery.

### iii.     Damages for Francisco Amezguita, Sr.

The documents and affidavits provided by Mr. Amezguita, Sr. demonstrate that he worked on New Mexico public works projects on and off for more than two years. (Doc. 33 at 4, 7-18; Doc. 33-2 at 12-13). He generally worked forty hours a week and five hours of overtime per week while employed. (Doc. 33 at 4; Doc. 33-2 at 12-13). He did not receive compensation for his overtime work. (Doc. 33-2 at 12-13). Over the years his straight time pay varied between $20.00 per hour to $34.00 per hour. (Doc. 33 at 4). The correct prevailing wage he should have been paid during those years rose four times from a low of $35.04 in 2007 to a high of $39.22 in 2010. (*Id.*). For ease of review, the Court will break down Mr. Amezguita, Sr.'s damages by year.

### Damages for 2007

Mr. Amezguita, Sr. worked for two weeks in 2007 on a public works project and was paid $20.00 per hour. (*Id.*). The correct prevailing wage for that work was $35.04 per hour. (*Id.*).  He also worked five hours of overtime for each of those two weeks and should have been paid $52.56 per hour for that work. Based on the prevailing wages, Mr. Amezguita, Sr. should have been paid $1,664.40 per week for each of the two weeks he worked in 2007 for a total of $3,328.80. Mr. Amezguita, Sr.'s damages for the two weeks worked in 2007 is therefore $1,728.80  ($3,328.80 minus the $1,600.00 actually paid by Dynasty). Mr. Amezguita, Sr. is also entitled to $1,000.00 in liquidated damages under the PWMWA since

13

the statute imposes a $100 penalty for every day of work in which an employee was not paid the correct prevailing wage. Mr. Amezguita, Sr.'s total damages for 2007 is $2,728.80.

### Damages for 2008

Mr. Amezguita, Sr. worked twenty weeks in 2008 on public works projects. His pay fluctuated during the year from $20.00 per hour to $33.00 per hour. (*Id.*). The correct prevailing wage rate for public projects in 2008 was $36.45 for the first forty hours of work and $54.68 per hour for overtime work. (*Id.*). Mr. Amezguita, Sr.'s worked seven hundred and sixty-three hours on public works projects in 2008 and that his total pay from Dynasty amounted to $18,169.00. (*Id.*). He also claims that he also worked five uncompensated hours of overtime per week, for a total of one hundred hours. (*Id.*). However, the records reflect that Mr. Amezguita, Sr. worked for less than thirty-five hours for five of those twenty weeks in 2008. (*Id.*). Therefore, the five hours of "overtime" worked in those five weeks may only be compensated at the regular prevailing wage rate since they do not count as hours worked in excess of forty hours a week. Therefore, the Court will compensate Mr. Amezguita, Sr. for having worked seven hundred and eighty-eight regular hours and seventy-five hours of overtime in 2008.

Based on the prevailing wage rate, Mr. Amezguita, Sr. should have been paid $28,722.60 for his regular hours as well as $4,101.00 for the overtime work. The total value of Mr. Amezguita, Sr.'s unpaid wages for 2008 was $14,654.60 ($32,823.60 minus the $18,169.00 actually paid by Dynasty). Mr. Amezguita is also entitled to $10,000.00 in liquidated damages under the PWMWA since Mr. Amezguita worked one hundred days (five days per week x 20 weeks) without being paid the prevailing wage rate. Mr. Amezguita's total damages for 2008 is therefore $24,654.60.

14

### Damages for 2009

Mr. Amezguita, Sr. worked for ten weeks in 2009 on public works projects. His pay during that year fluctuated between $25.00 per hour and $34.00 per hour. (*Id.*). The prevailing wage rate for public projects in 2009 was $37.86 per hour for the first forty hours of work per week and $56.79 per hour for overtime work. (*Id.*). Mr. Amezguita, Sr. worked at least forty hours a week in 2009 and worked five hours of overtime every week for which he was rarely compensated. (*Id.* (Mr. Amezguita's proposed distribution of funds indicates that he was paid for twelve hours of overtime work over two separate weeks in 2009 but that he did not receive the full prevailing wage for overtime work for those 12 hours)). The proposed distribution of funds shows that he worked a total of four hundred and two hours in 2009 and that his total pay from Dynasty for that year was $10,761.44. (*Id.* (this figure includes the value of the twelve hours of overtime work for which he was compensated). Based on the prevailing wage rate, Mr. Amezguita, Sr. should have been paid $15,219.72 for his work during the regular forty-hour work week as well as $2,839.50 for his overtime work. The total value of Mr. Amezguita, Sr.'s unpaid wages in 2009 is $7,297.78 ($18,059.22 minus the $10,761.44 actually paid by Dynasty). Mr. Amezguita Sr. is also entitled to $5,000.00 in liquidated damages under the PWMWA for the fifty days he worked in 2009 without being paid the prevailing wage rate. Mr. Amezguita Sr.'s total damages for 2009 is therefore $12,219.72.

### Damages for 2010

Mr. Amezguita, Sr. worked forty hours a week for three weeks in 2010 on public works projects. (*Id.*). His pay during those weeks was either $25.00 per hour or $34.00 per hour. (*Id.*). He also worked five hours of overtime for each of those weeks for which he was

not compensated. The prevailing wage rate for the first forty hours of work per week in 2010 was $39.22 per hour and $58.83 per hour for overtime. (*Id.*). Mr. Amezguita, Sr.'s proposed distribution of funds indicates that he worked one hundred and twenty hours in 2010 and that his total pay from Dynasty for that year was $3,288.00. (*Id.*). Based on the prevailing wage rate, Mr. Amezguita Sr. should have been paid $4,706.40 during the regular forty-hour work week as well as $882.45 for his overtime work. The total value of Mr. Amezguita, Sr.'s unpaid wages for 2010 is $2,300.85 ($5,588.85 minus the $3,288.00 actually paid by Dynasty). Mr. Amezguita, Sr. is also entitled to $1,500.00 in liquidated damages under the PWMWA for the fifteen days he worked in 2010 without being paid the prevailing wage rate. Mr. Amezguita Sr.'s total damages for 2010 is therefore $3,800.85.

The total value of Mr. Amezguita, Sr.'s unpaid regular and overtime wages and liquidated damages for his employment in 2007-2010 amounts to $43,403.17. The Court therefore recommends that Mr. Amezguita, Sr. be awarded $43,403.17.

### iv.    Damages for Francisco Amezguita, Jr.

Much like his father, Mr. Amezguita, Jr. has provided an affidavit and pay stubs demonstrating that he worked on New Mexico public works projects for Dynasty between 2008-2009. (Doc. 33 at 5; Doc. 33-1 at 2-13; Doc. 33-2 at 10-11). He states that he was never paid the correct prevailing wage while working on these projects and that he worked overtime hours for which he was either not compensated or paid too little. (Doc. 33 at 5; Doc. 33-2 at 10-11). As with Mr. Amezguita, Sr., the Court will break down the damages by year.

### Damages for 2008

Mr. Amezguita, Jr. worked twenty-one weeks on New Mexico public works projects

16

for Dynasty in 2008. (Doc. 33 at 5). His pay fluctuated between $12.00 per hour to $32.00 per hour. (*Id.*). The correct prevailing wage rate for public projects in 2008 was $36.45 for the first forty hours of work per week and $54.68 per hour for overtime work. (*Id.*). Mr. Amezguita, Jr.'s proposed distribution of funds shows that he worked eight hundred and eight hours on public projects in 2008 and that his total pay from Dynasty for that year amounted to $15,966.00 (*Id.*). He claims that he also worked five hours per week of overtime, for a total of one hundred and five hours, for which he was not compensated or not compensated at the proper rate. (*Id.*). However, the records reflect that Mr. Amezguita, Jr. worked for less than thirty-five hours for three of those twenty-one weeks in 2008. (*Id.*). Therefore, the five hours of "overtime" worked in those three weeks may only be compensated at the regular prevailing wage rate since they do not count as hours worked in excess of forty hours a week. Therefore, the Court will compensate Mr. Amezguita, Jr. for having worked eight hundred and twenty-three regular hours and ninety hours of overtime in 2008.

Based on the prevailing wage rate, Mr. Amezguita, Jr. should have been paid $29,998.35 for his regular hours as well as $4,921.20 for his overtime work. The total value of Mr. Amezguita Jr.'s unpaid wages for 2008 is $18,953.55 ($34,919.55 minus the $15,966.00 actually paid by Dynasty).Mr. Amezguita, Jr. is also entitled to $10,500.00 in liquidated damages for the one hundred and five days he worked without being paid the correct prevailing wage. Mr. Amezguita, Jr.'s total damages for 2008 is therefore $29,453.55.

### Damages for 2009

Mr. Amezguita, Jr. worked for three weeks in 2009 on public works projects at

$20.00 per hour. (*Id*.). The correct prevailing wage for public works projects in 2009 was $37.86 for the first forty of hours of work per week and $56.79 for all overtime hours. He worked a total of one hundred and four hours on public projects in 2009 and his total pay from Dynasty for that year was $2,080.00. (*Id*.). He also claims that he worked fifteen hours of overtime for which he was not compensated. (*Id*.). However, much as in 2008, Mr. Amezguita, Jr. worked less than 35 hours for one of those three weeks and therefore the five hours of "overtime" worked will only be compensated at the regular prevailing wage rate. The Court will compensate Mr. Amezguita, Jr. for having worked one hundred and nine regular hours and ten hours of overtime in 2009.

Based on the prevailing wage rate, Mr. Amezguita, Jr. should have been paid $4,126.74 for his regular hours and $567.90 for his overtime work. The total value of Mr. Amezguita Jr.'s unpaid wages for 2009 is $2,614.64 ($4,694.64 minus the $2,080.00 actually paid by Dynasty). Mr. Amezguita, Jr. is also entitled to $1,500.00 in liquidated damages under the PWMWA. Mr. Amezguita Jr.'s damages for 2009 is therefore $4,114.64.

The total value of Mr. Amezguita, Jr.'s unpaid regular and overtime wages and liquidated damages for his employment in 2008 and 2009 amounts to $33,568.19. The Court therefore recommends that Mr. Amezguita, Jr. be awarded $33,568.19.

### C.   Attorney Fees and Costs

In addition to the claim for damages, Plaintiffs request that they be awarded their reasonable attorney costs and fees in litigating this action. (Doc. 1 at 6, 8, 12; Doc. 32 at 5). The FLSA, MWA, and PWMWA all allow for successful plaintiffs to recover both their reasonable costs and attorney fees from defendants. *See* 29 U.S.C. § 216(b); N.M.S.A.

1978 § 50-4-26(E); N.M.S.A 1978 § 13-4-14(D). Adam Luetto, attorney for Plaintiffs and the opt-in employees, states that he spent $1,040.94 in costs while litigating this action and has provided itemized statements breaking down those costs. (Doc. 33-2 at 19). The costs include expenses for Mr. Luetto's travel to El Paso to meet with Plaintiffs and the opt-in employees, electronic caselaw research, and fees for a process-server. (*Id*). The Court finds these costs to be reasonable and recommends that Plaintiffs be awarded $1,040.94 in costs.

With regard to attorney fees, Mr. Luetto has presented  a bare-bones statement reflecting that he spent one hundred and thirty "units" on the litigation and that this amounts to $26,318.75 in reasonable fees. (*Id*. at 20). The "units", which the Court assumes to mean hours working on the litigation, are split into block numbers for different individuals who presumably performed work on the case. (*See, e.g.*, Doc. 15 at 22; Doc. 18 at 22 (listing various "Professionals", including Mr. Luetto, who worked on the case and the number of "units" spent working.)) The block units do not explain what kind of work the various "professionals" did or what hourly rate they charge for those services.

When calculating an award of attorney's fees under the FLSA, the Court first calculates the "lodestar" figure, which is reached by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking an award of attorney fees bears the burden of proving that the hours expanded are reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). Moreover, in determining whether the relevant attorneys have charged a reasonable fee, the Court should determine what lawyers of comparable skill and experience in the relevant practice area would charge for their time. *Ramos v. Lamm*, 713

F.2d 546, 559 (10th Cir. 1983). New Mexico courts also apply the "lodestar" method of computing attorney fees in statutory fee-shifting cases such as the MWA and PWMWA. *See,* e.g., *Atherton v. Gopin*, 272 P.3d 700, 702 (N.M. App. 2012) (affirming the lodestar method fo determining whether plaintiff's request for attorney fees was reasonable).

In this case, Mr. Luetto has provided next to no information regarding the work performed by himself or other "professionals" so that the Court might consider the reasonableness of the time expended. He has not explained which individuals were attorneys and which were support staff such as paralegals or investigators. He has not stated what the various individuals charged as an hourly rate. He has not provided an affidavit from himself or any other lawyer engaged in FLSA practice describing or affirming the reasonableness of the fee requested.

The Court recognizes that "practical considerations of the daily practice of law in this day and age preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (citing *Hensley*, 462 U.S. at 437). Nevertheless, litigants proceed at their own peril when submitting fee applications that provide little to no information from which to determine the services rendered or the reasonableness of the hours expended. *Id.* at 327-28. In this case, the Court has no means of ascertaining the reasonableness of the hours spent by Mr. Luetto and others on the case and has no means of determining whether the fees charged for those hours was reasonable. The Court therefore recommends that Plaintiffs' application for attorney fees be denied.

### III.   Conclusion

Based on the information provided in Plaintiffs' *Supplemental Briefing in Support of*

*Plaintiffs' Motion for Default Judgment*, (Doc. 32); Plaintiffs' *Declaration of Adam J. Luetto in Support of Plaintiffs' Supplemental Hearing*, (Doc. 33); and Plaintiffs' *Second Supplemental Briefing in Support of Plaintiffs' Motion for Default Judgment*, (Doc. 36), the Court recommends that Plaintiffs' request for damages and attorney's fees and costs be **GRANTED IN PART AND DENIED IN PART**.

**THE COURT THEREFORE RECOMMENDS** that:

i) Opt-in employee Leonel Carillo be awarded $8,480.00 in unpaid overtime wages and liquidated damages;

ii) Opt-in employee Irvin Jurado be awarded no damages;

iii) Opt-in employee Jose M. Sanchez be awarded $1,488.00 in unpaid overtime wages and liquidated damages;

iv) Opt-in employee Ricardo Valenzuela be awarded $18,000.00 in unpaid overtime wages and liquidated damages;

v) Opt-in employee Rodolfo Valenzuela be awarded $7,680.00 in unpaid overtime wages and liquidated damages;

vi) Plaintiff Francisco Amezguita, Sr. be awarded $43,403.17 in unpaid wages and liquidated damages;

vii) Plaintiff Francisco Amezguita, Jr. be awarded $33,568.19 in unpaid wages and liquidated damages;

viii) Plaintiffs' request for an award of $1040.94 for attorney costs be **GRANTED**, and;

viii) Plaintiffs' request for an award of $26,318.75 in attorney fees be **DENIED**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____

THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE